<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| WILLIAM KLAWONN, | : |
| Plaintiff, | : Civil Action No. 10-2108 (SRC) |
| v. | : |
|  | : **OPINION & ORDER** |
| YA GLOBAL INVESTMENTS, L.P. et al., | : |
| Defendants. | : |

**<u>CHESLER</u>, U.S.D.J.**

This matter comes before the Court on the motion to dismiss the Amended Complaint for failure to state a valid claim for relief, pursuant to Federal Rule of Civil Procedure 12(b)(6), by Defendant YA Global Investments, L.P. ("YA Global.") For the reasons stated below, the motion will be granted in part and denied in part.

**ANALYSIS**

**I.      Governing Legal Standards**

     A.     <u>Standard for a Rule 12(b)(6) Motion to Dismiss</u>

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008) (quoting <u>Pinker v. Roche Holdings, Ltd.</u>, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). A Rule 12(b)(6) motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to

relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). "The defendant bears the burden of showing that no claim has been presented." Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Twombly, 127 S. Ct. at 1964 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S. Ct. at 1964-65 (internal citations omitted); see also FED. R. CIV. P. 8(a)(2). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965 (internal citations omitted).

Factual allegations must be well-pleaded to give rise to an entitlement to relief:

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).

In reviewing a motion to dismiss, pursuant to Rule 12(b)(6), a court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the

2

complaint, and matters of public record.  Pittsburgh v. W. Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998); see also 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure: Civil 3d § 1357 (3d ed. 2007).  "Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

The Supreme Court has characterized dismissal with prejudice as a "harsh remedy."  New York v. Hill, 528 U.S. 110, 118 (2000).  Dismissal of a count in a complaint with prejudice is appropriate if amendment would be inequitable or futile.  Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).  "When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile."  Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

## II. Defendants' 12(b)(6) motion to dismiss

In brief, the Amended Complaint alleges that YA Global profited from trading the stock of NeoMedia Technologies, Inc. ("NeoMedia") in violation of § 16(b) of the Securities and Exchange Act of 1934.  YA Global argues that the Amended Complaint fails to state a valid claim under § 16(b) because it still does not adequately allege that YA Global was a statutory insider subject to § 16 as an officer, director, or beneficial owner of more than 10% of the issuer's common stock during the relevant time period.

This is now familiar ground, as the parties argued this dispute when YA Global first moved to dismiss the Complaint on the same grounds.  Plaintiff contends that he has now amended the Complaint to adequately allege sufficient ownership.  The Amended Complaint

3

acknowledges the existence of the conversion caps in all the relevant securities agreements (Am. Compl. ¶ 55), but contends that the caps were ineffective, based on five theories advanced in Plaintiff's opposition brief. These theories are: 1) the Series C stock conferred voting rights on YA Global which establish greater than 10% beneficial ownership; 2) Neomedia's defaults caused YA Global to be a greater than 10% beneficial owner; 3) YA Global was the beneficial owner of the stock held in "escrow" by Gonzalez; 4) the conversion caps were illusory, based on a SEC amicus brief; and 5) essentially, application of Rule 13d-3(b) circumvents the operation of the caps. This Court will examine each theory in turn.

As to the voting rights theory, YA Global argues that the new supporting allegations in the Amended Complaint are irrelevant. In response, Plaintiff makes several arguments. First, Plaintiff points to ¶ 59 in the Amended Complaint, which has been amended to allege that the failure to cross-reference the conversion cap in the voting rights provision, § 6.1, shows that the voting rights provision is not subject to the conversion cap. This is unpersuasive. First, this is a paradigmatic legal conclusion which will not be taken as true on a motion to dismiss. More importantly, however, it is an unconvincing legal conclusion. The fact that § 5.1 expressly references the conversion cap does not suggest that all other provisions which do not expressly invoke the conversion cap are unaffected by it. This argument is particularly weak in regard to the voting rights provision, which states that "[t]he Series C Preferred Shares shall have voting rights on an as converted basis." (Kravitz Dec. Ex. 30 § 6.1.) The use of the phrase "as converted" necessarily invokes the conversion provisions, including § 4.6, which contains the conversion cap.

Plaintiff next points to the allegation in the Amended Complaint that, according to the

4

October 2008 Proxy, YA Global possessed a total voting percentage of shares of 60.4%. (Am. Compl. ¶ 62.) In response, YA Global contends that this statement was made in error, and that NeoMedia's 2009 Form 10-K states that YA Global's voting rights were limited by the conversion caps to 4.99%. (Def.'s Br. 13 n.5.) On a motion to dismiss, this Court may take judicial notice of the contents of public filings with the SEC. Oran v. Stafford, 226 F.3d 275, 289 (3d Cir. 2000). In view of the allegation that all the relevant securities agreements contained conversion caps, absent factual allegations which would raise a plausible explanation of how YA Global acquired voting rights for 60.4% of the shares, this Court finds that the allegation that YA Global possessed 60.4% of voting shares is merely a conclusory allegation which is not sufficiently supported to be credited as a well-pleaded allegation. As the Supreme Court has stated:

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). The allegation of 60.4% ownership is not supported by sufficient factual allegations.

Plaintiff next points to the factual allegations in the Amended Complaint regarding the Series D stock: based on its ownership of 25,000 shares of Series D stock, YA Global cast 2.5 billion votes at a special meeting on March 30, 2010. (Am. Compl. ¶ 65.) The point appears to be that the similar Series C conversion cap therefore would not have limited voting rights. Again, this is unpersuasive, in view of the clearly limiting language of the Series C conversion

cap provision. As Plaintiff appears to recognize, he must provide factual support for the assertion that the Series C conversion cap was inoperative, and pointing to facts related to the conversion of Series D shares does not accomplish this.

Last, Plaintiff points to a filing with the SEC made by J. Michael Cline – a matter outside the Amended Complaint, stating a legal conclusion, contradicted by a later filing.

This Court finds that the Amended Complaint does not adequately allege greater than 10% beneficial ownership, based on the theory that the Series C stock conferred voting rights on YA Global which establish such ownership.

The Gonzalez/escrow theory points to a series of transactions alleged in the Amended Complaint in which NeoMedia executed promissory notes with Cornell Capital (predecessor entity to YA Global), placing shares of common stock as collateral into escrow. (Am. Compl. ¶¶ 112-116.) The Amended Complaint alleges that the escrow agent was David Gonzalez, who was employed by Yorkville, the general partner of Cornell Capital. (Am. Compl. ¶ 109.) Plaintiff asserts that the escrow arrangement was a "sham" and that Cornell Capital was able to exercise investment power over the common stock held in escrow by Gonzalez. (Am. Compl. ¶ 109.)

The problem with this theory is that the assertion that the escrow arrangement was a sham is purely conclusory; the Amended Complaint provides no support for it. To start with, a lender does not generally have investment power over collateral held in escrow. At the hearing, the Court asked Plaintiff to explain the basis for the sham allegation. Plaintiff replied that it was a sham because YA Global had no practical way to enforce the escrow agreements.[1] As Defendant

---

[1] In Plaintiff's opposition brief, Plaintiff argues that suit was "inconceivable" because NeoMedia was dependent on YA Global for funding and its outside counsel was paid by YA Global. (Pl.'s Opp. Br. 18.) Even if these assertions are true, it does not make the escrow

6

observed, however, YA Global had the same option to enforce the agreement that any party to an agreement has: it may bring suit in court. The fact that, as a practical matter, it may be very difficult for one party to bear the costs of litigation or to follow through with suit does not turn an agreement into a sham.

This Court finds the escrow theory unpersuasive, and concludes that the associated allegations do not provide factual support for any inference that YA Global was a beneficial owner of more than 10% of NeoMedia's shares at any relevant time.

As to the SEC amicus brief theory, Plaintiff makes a group of arguments that all revolve around the position that the blocker provisions are unenforceable under SEC policy, for various reasons. The gist of Plaintiff's position is that, in an amicus brief filed with the Second Circuit in Levy ex rel. Immunogen Inc. v. Southbrook Int'l Invs., Ltd., 263 F.3d 10 (2d Cir. 2001), the SEC set forth a group of factors for courts to consider in determining whether a blocker provision is illusory and therefore unenforceable. This is a very weak argument, for the following reasons. First, in the amicus brief, the SEC stated that it took no position on the validity of the conversion caps in that case. (2001 WL 34120374 at *24.) For no clear reason, since the SEC took no position, the brief listed some factors that "may" indicate that a cap is illusory or binding. (Id. at *25.)

Second, and more importantly, there is no indication in the Levy opinion that the Second Circuit paid any attention to the SEC's lists of factors. The Second Circuit made a judgment on whether the conversion cap was valid and binding, and it did so based on its interpretation of the

---

agreement a sham, such that YA Global should be held to be the beneficial owner of the escrowed shares. The bottom line is that the security interest of a lender in the collateral for a loan is not a beneficial ownership interest.

writing as a whole, with little additional explanation about what this means.  263 F.3d at 17.  This Court need not further inquire into the Second Circuit's method of analysis, since it is apparent that it did not make use of the SEC's lists of factors.  Plaintiff is thus in the position of citing an appellate case and recommending not that this Court look to what the Second Circuit said, but that this Court should look at an incidental portion of an amicus brief that appears to have played no role in the Second Circuit's decision.  Plaintiff has cited no case in which any court found these particular SEC comments useful.

      This Court thus finds the <u>Levy</u> amicus brief to have little persuasive value.  Plaintiff has failed to persuade this Court that the factual allegations in the Amended Complaint support an inference that any of the conversion caps in the securities in this case are illusory.

      Plaintiff also argues that YA Global was the beneficial owner of more than 10% of NeoMedia's stock based upon Rule 13d-3(b), which states:

> Any person who, directly or indirectly, creates or uses a trust, proxy, power of attorney, pooling arrangement or any other contract, arrangement, or device with the purpose of effect of divesting such person of beneficial ownership of a security or preventing the vesting of such beneficial ownership as part of a plan or scheme to evade the reporting requirements of section 13(d) or (g) of the Act shall be deemed for purposes of such sections to be the beneficial owner of such security.

By virtue of the express requirements of this Rule, an argument based on it rests on the existence of a plan or scheme to evade reporting requirements.  Here, the Amended Complaint does not plausibly allege such a plan or scheme.  Plaintiff's opposition brief asserts that the evidence is "overwhelming" that the intent of the caps was, in part, to help YA Global not make the disclosures that would otherwise be required by Section 13 of the Exchange Act, but what matters at this juncture is not evidence, but well-pleaded factual allegations.  (Pl.'s Opp. Br. 28.)

This Court does not find that the Amended Complaint contains sufficient factual allegations to support finding a plan or scheme to evade reporting requirements. Plaintiff's brief does not point to the support in the Amended Complaint for the assertion of Defendant's intent to evade reporting requirements, and this Court finds this to be an argument without adequate factual support in the Amended Complaint.

The theory that holds the most promise of validity contends that the conversion caps in two securities were waived by virtue of NeoMedia's defaults.[2] Defendant concedes that "the August 2006 and December 2006 Convertible Debentures provide that the conversion cap *is* waived in the event of a default by NeoMedia." (Def.'s Reply Br. 10 n.5.) The Amended Complaint alleges that Defendant defaulted on its registration obligations under these securities. (Am. Compl. ¶¶ 74, 79.) Furthermore, Defendant concedes that there could have been short-swing sales, with resultant § 16(b) liability, prior to November 7, 2007. (Def.'s Reply Br. 10 n.5.) Defendant's sole argument against liability under this theory is that the Amended Complaint fails to allege specific purchases and sales during the relevant time period.

The Amended Complaint alleges that, by November 22, 2006, by virtue of NeoMedia's default under the terms of the August 2006 Registration Agreement, YA Global became entitled to immediately convert the August 2006 Convertible Debenture to obtain 92.6 million shares of Common Stock, without restriction by any conversion cap. (Am. Compl. ¶ 75.) Based on the total shares outstanding as of March 19, 2007 of 897,194,732, YA Global therefore acquired

---

[2] Plaintiff actually advances a broader theory that includes defaults on certain warrants. (Pl.'s Br. 12.) Plaintiff appears to argue that the conversion caps are no obstacle here because YA Global had investment power over more shares than it could actually acquire through exercise of the warrants, which is unpersuasive.

investment power over, and thus beneficial ownership of, at least 10.3% of NeoMedia's shares. (Am. Compl. ¶ 76.)

The Amended Complaint further alleges that, by March 29, 2007, by virtue of NeoMedia's default under the terms of the December 2006 Registration Agreement, YA Global became entitled to immediately convert the December 2006 Convertible Debenture to obtain 69.3 million shares of Common Stock, without restriction by any conversion cap. (Am. Compl. ¶ 80.) Based on the total shares outstanding as of May 7, 2007 of 891,400,239, YA Global therefore acquired investment power over, and thus beneficial ownership of, an additional 7.8% of NeoMedia's shares. (Am. Compl. ¶ 81.)

The Amended Complaint thus provides sufficient facts to make plausible a claim that YA Global became beneficial owner of more than 10% of NeoMedia's shares of common stock as of November 22, 2006.

Section 16(b) requires that a beneficial owner realize a profit from a purchase and sale of an equity security within a period of less than six months. 15 U.S.C. § 78p(b). As just discussed, the Amended Complaint alleges that YA Global met the ownership requirement as of November 22, 2006. As to the purchases and sales after that time, the Amended Complaint alleges:

1. In June of 2006, Cornell Capital owned approximately 32 million shares. (Am. Compl. ¶ 142(a).)

2. Between November 29, 2006 and August 16, 2007, YA Global acquired approximately 41 million shares through conversion of the Series C stock. (Id. at ¶ 130.)

3. On or about October 12, 2007, Cornell Capital owned approximately 50 million shares. (Id. at ¶ 142(c).)

10

These facts imply that, during the period from June of 2006 though October of 2007, YA Global must have sold at least approximately 23 million shares.

These factual allegations, accepted as true, do not require a conclusion that a short-swing sale occurred after November 22, 2006. It is possible that the 23 million shares sold came from the inventory of 32 million shares that YA Global held in June of 2006. It is also possible that these shares were sold prior to November 22, 2006. Nonetheless, it is also plausible, given the facts alleged, that some portion of the roughly 7 million shares acquired by conversion on November 29, 2006 were sold within 6 months at a profit, thus coming within the scope of § 16(b). Yet there is no reason to consider only transactions that are alleged to have occurred in 2007.

Defendant's briefs treat the period of YA Global's possible liability as if it ended when the defaults were cured. This does not make sense. If the defaults caused the caps to be waived, and if YA Global then came to own more than 10% of NeoMedia's common stock, the period of potential liability did not end when the defaults were cured. Rather, the period of potential liability lasted until YA Global stopped having beneficial ownership of more than 10% of NeoMedia's common stock, whenever that was. This date could conceivably have been after December 17, 2009 – and Defendant concedes that the Amended Complaint adequately pleads transactions in the period from November 20, 2009 through December 17, 2009. (Def.'s Br. 5.) Defendants have not shown that the facts alleged in the Amended Complaint, taken as true, demonstrate that the period of potential liability ever ended.

In Iqbal, the Supreme Court distinguished between what is possible and what is plausible, with regard to pleading standards, as follows:

11

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Iqbal, 129 S. Ct. at 1949 (citations omitted). In the instant case, the Amended Complaint pleads just enough facts to meet the plausibility standard, within the limited confines of the default theory. What this means is that Plaintiff has stated a valid claim for relief for short-swing sales that occurred while YA Global was beneficial owner of more than 10% of NeoMedia's common stock by virtue of the waiver of the conversion caps in the August 2006 and December 2006 Convertible Debentures caused by NeoMedia's registration-related defaults. The Amended Complaint pleads sufficient facts to allow this case to proceed to discovery, so that Plaintiff may discover more facts about how long the period of liability may have lasted, and whether short-swing sales occurred during the period in which YA Global's beneficial ownership of NeoMedia shares exceeded the 10% threshold.

      This Court has reviewed the Amended Complaint and considered all of the theories by which, Plaintiff contends, the conversion caps in the relevant securities might be found to be inoperative. This Court finds that only the claim predicated on the default theory succeeds sufficiently to open the door to a plausibly viable claim, and that, based on this theory alone, the Amended Complaint articulates "enough facts to state a claim to relief that is plausible on its face." Twombly, 127 S. Ct. at 1974. Thus, the motion to dismiss will be granted, and the Amended Complaint will be dismissed, except to the extent that the Amended Complaint states a claim predicated on liability for short-swing sales that occurred while YA Global was beneficial

owner of more than 10% of NeoMedia's common stock by virtue of the waiver of the conversion caps in the August 2006 and December 2006 Convertible Debentures caused by NeoMedia's registration-related defaults.  It is only as to this exception that the motion to dismiss will be denied.  Insofar as the Amended Complaint asserts a claim under this default theory, it survives this dismissal.  The case may proceed on this theory only.

For these reasons,

**IT IS THEREFORE** on this 10th day of August, 2011,

**ORDERED** that Defendant's motion to dismiss the Complaint for failure to state a valid claim for relief, pursuant to Federal Rule of Civil Procedure 12(b)(6), (Docket Entry No. 48) is **GRANTED** in part and **DENIED** in part, and the Amended Complaint is hereby **DISMISSED** except to the extent that the Amended Complaint asserts a claim predicated on liability for short-swing sales that occurred while YA Global was beneficial owner of more than 10% of NeoMedia's common stock by virtue of the waiver of the conversion caps in the August 2006 and December 2006 Convertible Debentures caused by NeoMedia's registration-related defaults.
.

    s/ Stanley R. Chesler
Stanley R. Chesler, U.S.D.J.