UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **WILLIAM KLAWONN,**<br><br>Plaintiff,<br><br>v.<br><br>**YA GLOBAL INVESTMENTS, L.P.** and **NEOMEDIA TECHNOLOGIES, INC.**<br><br>Defendants. | Civ. No. 2:10-02108<br>(KM)(MAH)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

This matter comes before the Court upon the motion of Plaintiff William Klawonn (Docket No. 88) to Set Aside the Order of Magistrate Judge Michael A. Hammer (Docket No. 86) ("Hammer Order"), pursuant to Fed. R. Civ. P. 72(a). Judge Hammer's Order, dated January 29, 2014, denied Plaintiff's request to compel additional discovery from Defendant YA Global, a determination that was intertwined with the merits. I will affirm Judge Hammer's Order and deny this appeal. Because I write primarily for the parties on this discovery issue, I assume familiarity with the facts and background, and my discussion of them will be limited.

**I. Background**

 **A. Factual Overview**

Plaintiff Klawonn, a NeoMedia shareholder, asserts claims against Defendants YA Global and nominal Defendant NeoMedia for the disgorgement of short-swing insider trading profits allegedly earned in violation of Section 16(b) of the Securities Exchange Act ("SEA") of 1934, 15 U.S.C. §78p(b). A 10% beneficial ownership interest triggers liability for short-swing trading, as well as reporting requirements, under Section 16(b) of the SEA. YA Global asserts that

it was not subject to Section 16(b) because it was not the beneficial owner of more than 10% of NeoMedia's common stock.

On August 24, 2006, NeoMedia issued to YA Global a $5 Million convertible debenture ("CD" or "debenture") that was convertible to common stock. On December 29, 2006, NeoMedia issued a $2.5 Million debenture to YA Global that was likewise convertible to common stock. In connection with each debenture, the parties entered into an Investor Registration Rights Agreement ("RRA"). Each debenture was subject to a "conversion cap," which prevented YA Global from exercising its conversion rights to the extent that such exercise would result in YA Global's owning more that 4.99% of NeoMedia's outstanding common stock. The intention of the cap was to prevent YA Global from becoming a beneficial owner of 10% or more of NeoMedia's stock (the threshold of liability for short-swing profits under Section 16(b) of the SEA).

One term of the August 2006 CD was that NeoMedia was to obtain an effective registration of its common stock with the SEC no later than November 22, 2006. Failure to obtain that registration would constitute an "Event of Default." The December 2006 CD similarly required a registration statement by March 27, 2007, on pain of default. The registration deadlines were set forth in the RRAs. It is uncontested that NeoMedia did not meet either deadline.[1]

Failure to meet the registration deadline constituted an Event of Default. The default provision contained a "limitation of conversion," which provided that, upon an Event of Default, YA Global was relieved of its obligation to comply with the 4.99% conversion caps.

On November 7, 2007, well after the agreed deadline, the SEC issued a Notice of Effectiveness of registration of the relevant shares. NeoMedia and YA Global entered into a waiver agreement, dated December 31, 2008, in which YA Global relinquished its right to further liquidated damages triggered by the prior events of default. At that time, NeoMedia had already paid YA Global at least $1.3 million in liquidated damages for its failure to timely register the shares.

### B. The Discovery Dispute

At issue on this appeal is a dispute that "goes to the heart of the case and will determine whether any additional discovery is necessary . . . ." Docket

---

[1] The default did not necessarily result from any neglect by NeoMedia. Fulfillment of this condition depended on the SEC's issuance of its notification that registration was effective.

2

No. 72 ("Joint Status Letter"). The parties do not dispute that the Events of Default (i.e., the failure to meet the deadline for registration) caused the conversion caps to become ineffective. They disagree, however, as to the date, if any, that the period of default ended, a determination that will influence the period for which relevant discovery may be taken.

The dispute centers on the issue of whether NeoMedia's registration of the shares on November 7, 2007, though belated, cured the default and reinstated the conversion caps. If so, YA Global could not after that date become the beneficial owner of more than 10% of the stock, and liability for short swing profits could not attach.[2] If, on the other hand, the default was not cured (or was incurable), the conversion caps would remain dormant. With no conversion caps in place, there would remain a potential for short-swing profit liability after November 7, 2007.

That dispute directly affects the scope of relevant discovery. If the default was cured, and the conversion caps were restored, items such as trading records dating from after November 7, 2007, would not be relevant. If the default was not cured, and the conversion caps were not in place, then tsuch post-November 7, 2007 documents might be relevant. Judge Hammer agreed with YA Global that NeoMedia's November 7, 2007 registration cured the defaults and extinguished its ongoing liability, and he therefore disallowed discovery after that date.

### C. Procedural Background

I am not writing on a clean slate in this case, which was reassigned to me. I therefore summarize some of the rulings already entered.

This discovery issue was first raised by the parties in a joint letter dated September 22, 2011 (Docket No. 63) addressed to then-Magistrate Judge Shipp. Judge Shipp directed the parties to seek clarification from Judge Chesler, who was then assigned to this matter. Before Judge Chesler, YA Global argued that the evidence produced to date showed that the period of liability did not last beyond November 7, 2007. Klawonn maintained that the late registration did not cure the default and, therefore, did not reinstate the conversion caps.

---

[2] With the caveat that liability could continue if NeoMedia had *already* entered into transactions before the caps were restored that would push its beneficial ownership above 10%. *See infra.*

3

On October 27, 2011, Judge Chesler issued an Opinion & Order. Docket No. 65 ("Chesler Opinion & Order"). Judge Chesler noted that a prior opinion neither ruled out nor "unconditionally allow[ed] discovery after [November 27, 2007]." *Id.* at 1. Judge Chesler divided discovery into two phases: (1) "the period up to and including the date of the cure of the default(s) and (2) the period "after the cure of the default(s)." *Id.* Judge Chesler then posited that the question before the Court was whether discovery should proceed to the second phase, which was a matter to be decided by Magistrate Judge Shipp. The Magistrate Judge was directed to use

> procedures subject to his discretion, based on two questions: 1) does the evidence obtained demonstrate that the period during which conversion caps were ineffective ended on a particular date, *i.e.*, November 7, 2007, as asserted in Defendant's briefs in support of their motion to dismiss the Amended Complaint; and 2) if so, does the evidence obtained demonstrate a colorable basis for finding that, as of the date that the conversion caps were reinstated, YA Global had exercised its right to convert such that it then actually owned more than 10% of NeoMedia stock?

*Id.* If discovery did not demonstrate that, as of the date of cure of default(s), "which triggered reinstatement of the conversion caps, YA Global had exercised its right to convert such that it actually owned more than 10% of NeoMedia stock, then . . . the reinstated conversion caps would have been effective to preclude subsequent § 16(b) liability, and discovery would not proceed to the second phase." *Id.* at 2.

Judge Chesler concluded by clarifying that he had not wholly ruled out the possibility of a valid claim dating from after November 7, 2007. If YA Global gained a share of 10% during the interregnum when the conversion caps were suspended, then it could have possessed a 10% share even after the caps were restored. If so, then subsequent trades might be subject to Section 16(b), and discovery of them would be relevant. *Id.*

Unconvinced that Judge Chesler's Opinion & Order had fully resolved their dispute, the parties wrote another joint letter to Magistrate Judge Shipp. Docket No. 67. Before Judge Shipp addressed the joint letter, this matter was reassigned to me and to Magistrate Judge Hammer. On December 13, 2013, Plaintiff Klawonn filed a motion for determination of status and to compel discovery. Docket No. 78. Judge Hammer denied the motion for the time being, without prejudice to a hearing that would take place on January 13, 2014. Docket No. 82.

4

Judge Hammer, after hearing oral argument, ruled in favor of YA Global and denied Plaintiff's motion to compel. Judge Hammer ruled orally during the January 13, 2014 hearing and entered a written order reflecting that ruling on January 29, 2014.

Magistrate Judge Hammer, following the principles earlier laid down by Judge Chesler, held as follows:

> SEC's Notice of Effectiveness dated November 7, 2007 concerning NeoMedia Technology Inc.'s ("NeoMedia's") registration statement cured the defaults in the August 2006 and December 2006 Convertible Debentures and, upon the defaults being cured on November 7, 2007, the conversion caps in Section 3(b) of the August 2006 and December 2006 Convertible Debentures were again effective to prevent YA Global from exercising its rights to the extent that such conversion would result in YA Global owning in excess of 4.99% of the then issued and outstanding shares of NeoMedia common stock.

Hammer Order at 2–3. Based on that conclusion, Judge Hammer ruled that discovery would not proceed to the second (*i.e.*, post-November 7, 2007) phase. *Id.* at 3.

## II. Discussion

Magistrate Judge Hammer, who has managed discovery of this case and is thoroughly familiar with it, properly denied Plaintiff Klawonn's motion to compel discovery relating to the period after November 7, 2007. After reviewing the record, I find no evidence of any clear error, abuse of discretion, or misapplication of the law. Plaintiff's submissions do not demonstrate that any reversible error occurred.

### A. Standard of Review

The District Court will reverse a Magistrate Judge's non-dispositive order only if it is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1)(A); *Haines v. Liggett Group*, 975 F.2d 81, 92 (3d Cir. 1992); *see also Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1113 (3d Cir. 1986). Where the appeal seeks review of a matter within the core competence of the Magistrate Judge, such as a discovery dispute, an abuse of discretion standard is appropriate. *See Cooper Hospital/Univ. Med. Ctr. v. Sullivan*, 183 F.R.D. 119, 127 (D.N.J. 1998*); Deluccia v. City of Paterson*, No. 09-703, 2012 WL 909548, at *1 (D.N.J. March 15, 2012). "This deferential standard is especially appropriate where the Magistrate Judge has managed this case from the outset

5

and developed a thorough knowledge of the proceedings." *Lithuanian Commerce Corp., Ltd. v. Sara Lee Hosiery*, 177 F.R.D. 205, 214 (D.N.J. 1997)(internal quotations omitted); *see Deluccia*, 2012 WL 909548, at *1 (same).

Abuse of discretion review, however, also incorporates plenary review of legal questions. *See Koon v. United States*, 518 U.S. 81, 100 (1996). True, Magistrate Judge Hammer's ruling here involves some factual and discretionary determinations with respect to discovery. The Order is also intertwined with the merits, however, and it hinges on legal issues pertaining to defaults under the debentures. As to those legal issues, I do not defer to the Magistrate Judge's rulings but exercise plenary review. Ultimately, however, the standard of review may not be consequential, because I find myself in agreement with Judge Hammer's decision.

### B. There is No Error Warranting Reversal of Judge Hammer's Discovery Rulings

The plaintiff, Mr. Klawonn, raises the following arguments on appeal: (1) Judge Hammer erred in holding that the November 7, 2007 SEC registration operated to cure the Event of Default under the contractual terms of the CDs; (2) Judge Hammer erred by relying on the December 2008 waiver to demonstrate that the November 2007 registration cured the default; (3) Judge Hammer's holding that the conversion caps were restored by the late registration is contrary to law; and (4) Judge Hammer erred in concluding that Judge Chesler's discovery order supports YA Global's assertion that the Event of Default for each CD was cured by the November 7, 2007 registration. Docket No. 88. Essentially, each of these arguments is a challenge to Judge Hammer's conclusion that the November 7, 2007 registration cured the Event of Default and restored the conversion caps.

In support, Klawonn points to the terms of the CDs, which do not provide that an Event of Default can be cured by late registration. The deadlines, he says, were highly material conditions of the contract, giving rise to defaults that could not be cured by late performance. Klawonn adds that Judge Hammer's reliance on cases under the bankruptcy code was erroneous. Finally, Klawonn stresses that Judge Chesler's Opinion & Order did not hold that the late registration operated as a cure of the Event of Default. I discuss each of these arguments below.

### 1. *The November 7, 2007 SEC registration as a cure of the Event of Default*

I agree with Judge Hammer's ruling that the removal of the conversion caps was in effect a suspension, which operated only during the period of non-registration. The default ended, and the conversion caps were reinstated, when the registration became effective on November 7, 2007.

The operative language of the debentures concerning an Event of Default provides: "Upon an Event of Default, notwithstanding any other provision of this Debenture or any Transaction Document, the Holder shall have no obligation to comply with or adhere to any limitations, if any, on the conversion of this Debenture or the sale of the Underlying Shares." Docket No. 88 ("Pl. Br."), Exhs. A ("Aug. CD), B ("Dec. CD") (collectively, the "CDs"). According to Klawonn, the use of "upon," meaning "immediately or very soon after" is not the same as "during," which is what Judge Hammer interpreted the language to mean.[3] Had the parties intended to limit the consequences of default to the period of default, says Klawonn, they would have used different language. *Id.* at 8. Many contracts, for example, specify the conditions under which a party may cure a default, but these debentures did not. According to Klawonn, missing the registration deadline was a material breach of contract, which destroyed the conversion caps for good. *Id.* at 8–9 (citing RSTM (Second) of Contracts § 242).

Judge Hammer accepted YA Global's contrary interpretation, which was that the conversion caps never "went away," but were suspended during the period of default. Docket No. 88, Exh. H ("Trans.") at 26. It must be said that the debentures do not explicitly so provide. While they address in some detail the consequences of a default, they do not specifically address the subject of cure. Judge Hammer reached his conclusion after considering the language of the debentures, the surrounding circumstances, the parties' reasonably inferable intentions, and the case law.

---

[3] Pl. Br. at 7. As support, Klawonn cites an online dictionary, http://dictionary.reference.com. YA Global argues that this argument is waived because Klawonn did not assert it in their joint letter or at oral argument before the Magistrate Judge. *See Lithuanian Commerce Corp., Ltd. v. Sara Lee Hosiery*, 177 F.R.D. 205, 211 (D.N.J. 1997) ("[s]ince this argument was not presented to the Magistrate for his consideration before decision, the court will not consider it now.") (citation omitted). I prefer to deal with the merits; even if this argument had been raised, it would not have constituted grounds for setting aside Judge Hammer's ruling.

Under the debentures, an Event of Default means exactly that, an occurrence that triggers or constitutes default. CDs §2(a) ("An 'Event of Default'" . . . means any one of the following events . . . ."). The Event of Default at issue here is: "The Obligor shall fail to file the Underlying Shares Registration Statement . . . with the [SEC] or the Underlying Shares Registration Statement shall not have been declared effective by the [SEC], in each case within the time periods set forth in the Investor Registration Rights Agreement." CDs at §2(a)(vii).

Indeed, the very existence of the liquidated damages provision, while it does not prove YA Global's interpretation, tends to support it. Once the deadline had passed without the registration having become effective, NeoMedia became liable for damages equal to 2% of the liquidated value of the convertible debentures for each 30-day period, up to a maximum of 20% of the purchase price of the debentures. RRA § 2(c). As it happened, the parties agreed to waive further liquidated damages after a certain point, *see* section II.B.3, *infra*, but the principle, as it bears on the plausible interpretation of the contractual language, remains the same. The per-month assessment of damages makes most sense as an interim measure, to be applied until the default is cured, and designed to give an incentive to cure.[4]

More generally, it is unlikely that the parties intended a conversion right that was open-ended and unlimited. NeoMedia, for its part, would not have wished to hand YA Global the means to purchase corporate control, free of the conversion caps. YA Global, for its part, would not have wished to expose itself to perpetual Section 16(b) liability and reporting requirements, despite NeoMedia's having cured the default when the registration of shares became effective.

The parties could have selected language that better expressed their contractual aims. But a contract need not be ideal—just clear enough. *See Svensson v. Securian Life Ins. Co.*, 706 F. Supp. 2d 521, 536 (S.D.N.Y. 2010) ("Plaintiff is correct that the Policy could have been drafted differently. That is,

---

[4]    NeoMedia took on the risk of the SEC's failure to act timely on its registration statement, exposing itself to monthly-accruing liquidated damages. It seems less likely that NeoMedia would have agreed that the SEC's tardiness, a matter beyond its control, would operate as a material breach that permanently destroyed its contractual rights.

the Policy could have been written a way that might have made this an easier case. But that is true in almost every contract case.").[5]

Judge Hammer's interpretation of the debentures is sound and I affirm it. Upon the event of default—the deadline's expiration without the registration having been declared effective—the conversion caps ceased to bind YA Global. That is not the same, however, as the conversion caps' being extinguished permanently. Once the registration became effective, they were reinstated.

### 2. *Klawonn's contention that Judge Hammer misapplied precedent.*

Klawonn asserts that Judge Hammer erred in relying on two cases interpreting the Bankruptcy Code: *In re Taddeo*, 685 F.2d 24 (2d Cir. 1982), and *In re Roach*, 824 F.2d 1370 (3d Cir. 1987).[6]

Judge Hammer did not overlook the distinction between contract law and bankruptcy law. He noted during oral argument that "plaintiff is quite correct that both *Taddeo* and *Roach* are tied to the bankruptcy code . . . ." Trans. at 28. *Taddeo* reasoned that "[c]uring a default commonly means taking care of the triggering event and returning to pre-default conditions. The consequences are thus nullified." 685 F.2d at 26-27. During oral argument, Judge Hammer clarified that he did not rely on such language in connection with the intricacies of bankruptcy law. Any reliance on this case was "simply a recognition of the general proposition that once a default is cured, the conditions return to the prior state of affairs, minus a contractual provision to the contrary." Trans. at 28.

In short, Judge Hammer cited these cases for general, fairly unobjectionable propositions, and in any event did not give them great weight. In his citation of them, I find no error that would justify me in overturning Judge Hammer's ruling.

---

[5] In particular, it is not fatal that the parties did not explicitly provide for a grace period or cure period. The opportunity to cure, whether or not provided for in the contract, is routinely found to be an implied precondition for a finding of material breach. *See generally Restatement Second, Contracts* §§ 237 241.

[6] YA Global again argues that this argument is waived because Plaintiff did not make the argument in either the joint letter or at oral argument. Again, I consider it on the merits and find that, even if it had been raised, this argument would not furnish grounds to set aside Judge Hammer's ruling.

9

### *3. The December 2008 waiver of further liquidated damages.*

Klawonn further submits that Judge Hammer's decision is infected by a misinterpretation of a waiver agreement, dated December 31, 2008 (Docket No. 88, Exh. E (the "Waiver")). YA Global and NeoMedia entered into the Waiver in response to, *inter alia,* the failure to meet the deadlines for effective registration of shares.

The recitals in the Waiver acknowledge that the SEC's November 7, 2007 Notice of Effectiveness had satisfied NeoMedia's obligations, leaving open only the question of liquidated damages:

> [T]he Parties hereby acknowledge and agree that the Registration Statement was declared effective by the SEC on or about November 7, 2007, fully satisfying, with the exception of the payment of any and all Liquidated Damages, all covenants and obligations of the Company under the February RRA, the August 2006 RRA, the December RRA, and the Mater RRA.

(Waiver, p. 3). The Waiver, among other things, relieved NeoMedia of the obligation to pay liquidated damages beyond those already paid (approximately $1.3 million). Judge Hammer rightly treated this language as corroborative of his view that the SEC declaration of the effectiveness of the registration of shares, by "satisfying ... all covenants and obligations..." cured or ceased the default as of November 7, 2007. (Hearing Tr. 27-28).

Contrary to Klawonn's argument, the cure of the default was not *effected* by the Waiver in December 2008; rather, the Waiver *acknowledged* that the cure of the default had occurred some thirteen months previously, as of November 7, 2007. In short, the Waiver does not constitute the cure of default; it is evidence of that cure. I also agree with Judge Hammer's rejection of Klawonn's argument that the Waiver applies only to the RRAs, not the debentures. These documents are closely interrelated and must be interpreted as a whole. *See, e.g.,* Aug. CD §2(a)(vii) (providing that it shall be an Event of Default if "the Underlying Shares Registration Statement shall not have been declared effective by the [SEC] . . . within the time periods set forth in the Investor Registration Rights Agreements.").

I find no error in Judge Hammer's reliance on the Waiver as further evidence of the cure of default as of November 7, 2007.

### 4. *Judge Chesler's discovery order*

Klawonn submits that Judge Hammer misconstrued Judge Chesler's earlier Opinion & Order, which bifurcated discovery. At oral argument, Judge Hammer stated that "[w]hen Judge Chesler issued the clarifying Opinion & Order, built into that was the conclusion and premise that the conversion caps – or that the curing of the default reinstated the conversion caps." (Hearing Tr. at 26). Klawonn insists that Judge Chesler left that issue open, and that Judge Hammer's ruling is therefore built on a misunderstanding. I disagree.

First, I would not set aside Judge Hammer's order based on what seems to have been an ancillary comment at oral argument. Second, I agree with Judge Hammer that cure of the default and reinstatement of the conversion caps were implicit in Judge Chesler's Order & Opinion.

Judge Chesler ruled that discovery be divided into two phases. In the first phase, Plaintiff could obtain discovery "for the period up to an including the date of cure of the default(s) [*i.e.*, November 7, 2007]." (Chesler Opinion & Order at 2). In the second phase, if appropriate in light of what had been revealed by phase one, discovery would be produced "for the period after the cure of the default(s)." *Id.* And Judge Chesler clearly stated what he meant by that: "If the discovery produced to date does not demonstrate a colorable basis for finding that, *as of the date of cure of the defaults, which triggered reinstatement of the conversion caps*, YA Global *had* exercised its right to convert such that it actually owned more than 10% of Neo[M]edia stock, then, as the Court previously concluded, the reinstatement conversion caps would have been effective to preclude subsequent §16(b) liability, and discovery would not proceed to the second phase." *Id.* (emphasis added).

Judge Chesler's order rests on the premise that the cure of the defaults "triggered reinstatement of the conversion caps." If the cure did not restore the caps, there would be little justification for the bifurcation of discovery. The only caveat offered by Judge Chesler was that, if YA Global had taken advantage of the interregnum to engage in transactions that would push its beneficial ownership above 10%, it might be exposed to Section 16(b) liability even after the caps were restored. But phase one (pre-November 7, 2007) discovery would reveal whether such interregnum transactions had occurred.[7]

---

[7] To the extent that Klawonn is suggesting that I reconsider Judge Chesler's ruling, I decline. *See generally Geibel v. United States*, 667 F. Supp. 215, 218-19 (W.D. Pa. 1987), *aff'd*, 845 F.2d 1011 (3d Cir. 1988) ("The doctrine of law of the case

Judge Hammer did not treat the resolution of the issues before him as having been wholly predetermined by Judge Chesler. He simply observed that Judge Chesler's Opinion & Order articulated the premise that a cure of the defaults would reinstate the caps. Judge Hammer considered the parties' arguments, Judge Chesler's opinions and orders on the motions to dismiss the original and amended complaints, the papers submitted by the parties, and all new material proffered. (Hearing Tr. at 26 ("also rather importantly," considering the "attachments . . . appended to the January 5, 2012 letter.").

I find no conflict between Judge Hammer's ruling and Judge Chesler's earlier Opinion & Order. I will not overrule Judge Hammer's Order on this ground.

### III. Conclusion

For the foregoing reasons, Judge Hammer's January 29, 2014 Order, Docket No. 86, is affirmed, and the appeal of the Plaintiff is **DENIED**.

An appropriate Order follows.

_____
**Kevin McNulty**
**United States District Judge**

Dated: February 3, 2015

---

provides that when one district judge has rendered a decision in a case, and the case is later transferred to another judge, the successor should not ordinarily overrule the earlier decision.")

12